## No. 10,283.

### IN RE JAMES H. DOUGLAS, PRAYING FOR A WRIT OF POSSESSION.

1. Act 82 of 1884 is a remedial and healing statute intended to cure irregularities in prior tax proceedings by making the tax deeds conclusive evidence of compliance in certain matters.
2. Certain requirements are absolutely essential to a valid exercise of the taxing power, without which no valid tax sale could be made. These are stated.

3. A statute dispensing with such essentials, or attempting to heal the defect of compliance therewith, could not stand,

4. But, outside of these essentials, there are many matters as to which the legislative discretion is supreme, such as those affecting the time, manner and form in which the proceedings shall be conducted.

5. The legislature may make the tax deed conclusive evidence of compliance with every requirement, which it might, originally, in the exercise of its discretion, have dispensed, with, and may validate retrospectively any proceeding which would have been legal if authorized in advance.

6. Orloff Lake's case affirmed and applied and shown not to be in conflict with other decisions of this court.

7. In the application of statutes like Act 82, even if, in some respects, they exceed legislative power, they are to be enforced in so far as they do not violate the constitutional right of the property holder, and restraint in so far as they do.

8. Taxes prime all the incumbrances, and a valid tax sale passes title, free from mortgages.

APPEAL from the Civil District Court for the Parish of Orleans.
Voorhies, J.

*James C. Moïse* for Plaintiff and Appellant.

*William Armstrong*, Curator *ad hoc* for D. C. Clarke.

The opinion of the court was delivered by

FENNER, J. Douglas, having become the purchaser of certain property at a tax sale made under the provisions of Act 82 of 1884, and having received a tax deed in conformity to said act, instituted these proceedings contradictorily with the former owner to be put in possession of the property. Having recovered judgment and been put in possession, he discovered that there were of record certain judicial mortgages on the property resulting from inscription of judgments against the former owner.

Section 5 of Act 82 provides that " the recordation of the deed of sale or a duly certified copy of the same in the mortgage office shall operate as a cancellation of all conventional, legal and judicial mortgages."

Douglas, therefore, having duly recorded his deed, took a rule upon the Recorder of Mortgages and the several mortgagees, to show cause why said inscriptions should not be erased and cancelled.

The answer of the mortgagees sets out various defenses entirely similar in character to those which were made and overruled by us in a recent case. In the matter of Orloff Lake, 40 Ann: 142.

The Act 82 of 1884, is a remedial and healing statute, similar to others which have been passed in many States of the Union, the effect of which

is to cure defects in prior tax proceedings by making the tax deeds conclusive evidence that the requirements of the law in certain matters had been complied with.

Such statutes have been frequently subjected to judicial consideration and review.

The principle is universally acknowledged that were the property is taken in the valid exercise of the taxing power, the owner is not deprived of it "without due process of law," within the meaning of the prohibitions on that subject contained in the State and Federal Constitutions. McMillen vs. Anderson, 95 U. S. 40 ; Davidson vs. New Orleans, 96 U. S. 97.

There are, however, certain requirements absolutely essential to constitute a valid exercise of the taxing powers, without which no tax sale could be validly made. The chief of these indispensable prerequisites are :

1. That a tax has been levied.
2. That the property sold is subject to taxation.
3. That the property has been assessed.
4. That the taxes had not been paid.
5. A statutory warrant for the sale.
6. A sale made under such warrant.

Any statute authorizing the sale of a man's property for taxes which had not been levied, or where the property was exempt from taxation, or where the property had not been assessed, or where the taxes had been duly paid, would unquestionably be a taking in excess and outside of the taxing power, and such taking would not be with "due process of law."

So any statute which should attempt to cure such substantial defects, or should attempt to debar the owner from proving, in defense or assertion of his right, that a pretended tax sale was wanting in any of these essential prerequisites, would violate the constitutional prohibition and could not be enforced.

But outside of these fundamental and quasi-jurisdictional requirements, and with reference to the time and manner in which the tax proceedings shall be conducted, the legislative discretion is supreme and cannot be judicially controlled.

As the Legislature may, in advance, prescribe and direct the time and manner in which these shall be done, it may likewise provide that failure to comply with such directions shall not defeat the sale and may constitutionally provide that the tax deed shall be conclusive evidence that

such directions were complied with, as to time, manner and every other matter originally within the legislative discretion.

Broadly stated, the doctrine is that the Legislature may make the tax deed conclusive evidence of compliance with every requirement which the Legislature might, originally, in the exercise of its discretion, have dispensed with.

As stated by Judge Cooley: "The general rule has often been declared that the Legislature may validate, retrospectively, the proceedings which they might have authorized in advance." Cooley on Taxation, p. 229.

He states certain exceptions, however, to the general rule which have no application in the instant case.

This doctrine is supported by a vast mass of authority: Allen vs. Armstrong, 18 Iowa, 510 to 515; Rema vs. Cowan, 31 Iowa, 125 to 128; Bulkly vs. Callahan, 32 Iowa, 461 to 466; Clark vs. Thompson, 37 Iowa, 539; Easton vs. Perry, 37 Iowa, 682 to 683; Phelps vs. Meade, 41 Iowa, 470 to 474; Jackson vs. Morse, 18 Johnson, 441-3; Assurance Co. vs. Board, 24 Barbour, 166 to 169; Stewart vs. Schoenfelt, 13 Sergt & Rawle, 360 to 381; Hubley vs. Keeper, 2 Penn. (Penrose & Watts) 501 to 502; Peters vs. Heasley, 10 Watts, 209; 18 How., U. S. 275, 283 to 285; Thomas vs. Lawson, 21 How., 341 to 342; Callahan vs. Hurley, 93 U. S., 387 et seq.; De Treville vs. Smalls, 98 U. S., 517 to 528; Keeley vs. Sanders, 99 U. S., 441; Sherry vs. McKinley, 99 U. S., 497; 102 U. S., 586 to 602, Springer vs. U. S.; 17 Wisconsin, 563 to 565, Smith vs. Cleveland; 23 Wisconsin, 617-8, Huey vs. Van. Wie.

The Supreme Court of the United States, in commenting on an Iowa statute, identical with Act 82, said: "The whole act exhibits an intention of the Legislature to enforce the payment of taxes, by securing purchasers at tax sales in their purchases and thus making it dangerous for owners of property to neglect payment of taxes due the State. It removes difficulties which had before existed in the way of establishing tax titles and at the same time it works no injustice to owners of land subject to taxation." Callahan vs. Hurley, 93 U. S. 387.

In a like case, the same court said: The statute "left to the owner of the lands every substantial right. It was his duty to pay the tax when it was due. His land was charged with it; and the proceeding ending in the sale was simply a mode of compelling the discharge of his duty. All his substantial rights were assured to him by the permission to show that he owed no tax; that his land was not taxable; that he has paid what was due, or that he had redeemed his land after the sale. He was thus permitted to assert everything of substance; everything except

mere irregularities. * * There is no possible excuse for not enforcing such statutes according to their letter and spirit." De Treville vs. Smalls, 98 U. S., 517.

In a Pennsylvania case, Ch. J. Tilghman said, in supporting a similar statute: " One cannot, without pain, see a man divested of his property in a tract of 400 acres for a tax of less than four dollars. But if land holders will pay no attention to taxes, what is to be done? It must be presumed that every man knows the land he owns, and knows that taxes are imposed on it annually, and sales made of the lands the taxes on which are unpaid. It is within his own knowledge, too, that he has not paid them, and has thus been guilty of a breach of duty." Stewart vs. Schanfeldt, 13 Serg. & R. 360.

Nothing is urged against the sale in this case which was not urged in Lake's case.

It is not pretended that the proceedings were lacking in any of the essential requirements above referred to.

The only complaint is of certain irregularities in the assessment in non-compliance with the special requirements of the law under which it was made. The fact remains that an assessment was actually made by a description sufficient to identify the property and not to mislead the owner, which is all that is essential. Cooley on Taxation, p. 282.

If the proceedings had complied strictly and in all respects with the letter of the law, obviously there would be no need of invoking this healing remedial statute. The irregularities are of the very character which the statute was intended and was competent to heal.

We might have rested our decision upon Lake's case, but we have deemed it advisable to express our views more at length, because our attention has been called to a curious misapprehension of the doctrine announced by us, which seems to exist in the minds of our learned brothers of the Court of Appeals and of certain district judges. They seem to consider that the doctrine in Lake's case is in conflict with the prior jurisprudence of this Court and with two of our very recent decisions on the subject of the sufficiency of the description required to constitute a valid assessment. The cases referred to are Bell vs. Taylor, 35 Ann. —, and Kearns vs. Collins, 40 Ann. —.

A reference to those cases will show that the sales therein concerned were not made under Act 82 of 1884, and were not, in any manner, governed by that statute. The validity of the tax proceedings, therefore, depended on their compliance with the provisions of the particular revenue laws under which they were taken. There had been no healing statute curing deficiencies or making the tax deeds conclusive. There-

fore the doctrine of Lake's case had no application, and the decisions present no sort of inconsistency.

The suggestion that the decision in Lake's case conflicts with prior jurisprudence is utterly untenable, because there exists no prior jurisprudence in this State on the same subject matter. Act 82 of 1884 was the first healing statute of that character passed in this State, and Lake's case was the first decision interpreting and applying such a statute.

Therefore, the conflict suggested is entirely imaginary. In construing and enforcing the statute we have found no precedents in this State, and have been compelled to seek them in the jurisprudence of other States and of the Supreme Court of the United States, which amply and firmly support the doctrine announced by us.

We note one contention advanced in behalf of the mortgagees, simply to show that it has not escaped our attention, viz: That even though the sale and tax deed may be conclusive as against the owner, they cannot so operate as against the mortgagees. This has not the slightest merit.

Taxes prime all other incumbrances, and a valid sale for taxes passes a title free from mortgages, which must then look for satisfaction exclusively to the proceeds of sale.

This is too elementary to require further comment.

In conclusion, we would say that we have not held that every feature of Act 82 of 1884 is constitutional.

In the application of such statutes it is well settled that they are to be enforced in so far that they do not violate the constitutional rights of the citizen as property owner, and restrained in so far as they do violate them. Allen vs. Armstrong, 16 Iowa 510; McCready vs. Sexton, 29 Iowa 356; Rinea vs. Cowan, 31 Iowa, 125, and other cases heretofore cited.

We have applied the statute to the allegations and facts in the cases before us. Whenever it shall be advanced as a shield to protect invasion of the constitutional rights of the citizen, it will be set aside and disregarded.

It is, therefore, ordered and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered that the rule herein be made absolute, and, accordingly, that mortgages mentioned therein be cancelled and erased so far as they affect the property concerned.