## Allen v. Armstrong.

1. REVENUE LAWS: TAX TITLE: EVIDENCE. A tax deed is by statute made evidence of a compliance with the requirements of the law anterior to the execution of the deed; and a party claiming under such a deed is not bound, as preliminary to his right to introduce the same in evidence, to first prove an assessment, levy, advertisement, &c.

2. TAXING POWER: DUE PROCESS OF LAW. The taking of property in the due and valid exercise of the taxing power which inherently resides in every government, does not deprive the owner of it "without due process of law" in the meaning of section nine of the bill of rights.

3. SAME. There are indispensable requisites of the power of taxation which must be observed to deprive the owner of his title and transfer it to another; but minor matters relating to the mode or manner of exercising the power may be dispensed with.

4. SAME: STATUTE DOUBTFUL. The provisions of 3784 of the Revision of 1860, making the tax deed *conclusive* evidence of matters vital and

essential to any valid exercise of the taxing power, are of questionable validity.

5. SAME. When any given step or matter is so indispensable in the exercise of the taxing power that no tax can be raised until it is taken, it cannot be dispensed with; and the owner cannot be *concluded* from showing the truth as to such a step or matter by any legislative action.

6. SAME: NOTICE. The provision of the Revenue Law, making a tax deed conclusive evidence of due notice of the sale, is valid and binding, as such notice is not essential to an exercise of the taxing power.

7. SAME: ASSESSOR DE FACTO. That an assessor was not duly qualified when, acting as an officer *de facto*, he assessed the property, does not invalidate such assessment, or affect the validity of a sale for taxes.

### *Appeal from Tama District Court.*

### THURSDAY, JUNE 23.

THIS action was brought by the plaintiff to recover possession of lots 2 and 3, in block 4, in McRobert's second addition to the village of Toledo. The plaintiff claimed under a tax deed, and judgment was rendered in his favor by the Court below. The questions made will appear in the opinion. Defendant appeals.

*W. H. Stivers* for the appellant, cited 13 How., 472; 1 Scam., 338; 3 Id., 238; 2 Eng. (Ark.), 424; 11 Ill., 428; 2 G. Greene, 26; 10 Yerg., 70; 2 Pet., 653; 10 Wend., 393; 1 Gilmer, 131; 4 Hill, 140; 4 Barb. S. C. R., 483; 4 Denio, 15; 2 How., 43; 1 Hill, 130.

*Isaac L. Allen* for the appellee, cited 7 Pet., 769; *Gwynne* v. *Neiswanger*, 18 Ohio, 400; *Heinman* v. *Posse*, 1 Gilm, 131.

DILLON, J.—I. On the trial the plaintiff offered in evidence a tax deed for the property in controversy, dated the 11th day of February, 1864, executed by the treasurer of the county of Tama. This deed was in literal compliance with the form prescribed by section 783 of the Revision, was properly acknowledged, and was "admitted by the

defendant to have been duly executed and recorded." The defendant objected to its introduction because the plaintiff "had not *first* proved the assessment of the property, levy of taxes, and advertisement for sale, &c."

This objection was overruled, and the defendant excepted. Under § 784 of the Revision (which will presently be more fully alluded to), there was no error in the ruling of the Court below. The deed is made by the statute, evidence of a compliance with the requirements of the law, anterior to the execution of the deed, and hence the plaintiff was not bound, as preliminary to his right, to put the deed in evidence, *first* to prove an assessment, levy, advertisement, &c.

II. The main questions in this case arise under § 784 of the Revision, being § 74 of the act of April 3d, 1860. No tax law which has ever come under our observation, contains provisions so sweeping and stringent as this one. From a comparison of it with many of the adjudicated cases upon the subject of tax titles, it seems to have been purposely drawn to outwit courts, and to prevent them from resorting to those refined and astute constructions so frequent in cases of this kind, and which are not unreasonably dictated by the policy of the law, which disfavors forfeitures, and by the sympathy of judges, who are naturally ingenious to prevent the owner of an estate worth hundreds and it may be thousands of dollars from having it lost to him for a failure to pay, within a specified time, a tax of a few dollars.

This section (784) declares that the county treasurer's deed "shall vest in the purchaser, all of the right, title, interest and estate of the former owner, in and to the land conveyed;" that "it shall be *prima facie* evidence in all courts of the following facts: 1st. That the property conveyed was subject to taxation; 2d. That the taxes were not paid; 3d. That the property conveyed was not redeemed,

Allen v. Armstrong.

and shall be *conclusive evidence* of the following facts: 1st. That the property had been listed and assessed, at the time and in the manner required by law; 2d. That the taxes were levied according to law; 3d. That the property was advertised for sale in the manner and for the length of time required by law; 4th. That the property was sold as stated in the deed; 5th. That the grantee was the purchaser; 6th. That the sale was conducted as required by law; 7th. That all the pre-requisites of the law were complied with by all of the officers, from the listing and valuation of the property, up to the execution of the deed, both inclusive, and that all things whatsoever required by law to make a good and valid sale, and to vest the title in the purchaser, were done, except in regard to the three points named in this section, wherein the deed shall be *prima facie* evidence only."

Lest there should be any doubt about the meaning of this language, it is substantially repeated in the remainder of the section. To same effect, see § 762. It is furthermore provided that "all acts of assessors and other officers, *de facto*, shall be deemed and construed to be of the same validity as acts of officers, *de jure*." Rev., § 786.

In order that the exact case before us, and consequently, the precise points which we *decide*, may be understood, it is proper to remark that it was not pretended by the defendant on the trial that there was no assessment or valuation in fact, or that there was in fact no levy, or that the land was not liable to taxation, or that the taxes had been paid, or that no sale was ever made, or that the land was redeemed, or that there was any fraud or mistake on the part of either the officers or the purchaser.

The defendant simply offered to show to defeat the plaintiff's deed, not that the lands were not advertised at all, but that the advertisement was not sufficient, and that in it the lands were described as being delinquent for the year

1839, instead of 1859. He also offered to show that the assessor assessed this property before he was qualified, and that after he qualified, he did not reassess it. These objections were overruled, and the defendant excepted, and these constitute the only remaining questions which the record presents for our determination. Under the sections of the law above referred to (§§ 784, 786), the defendant in his argument, in this court, does not claim that the court below erred, provided these sections are constitutional, and the only question which the appellant has urged upon our consideration is in relation to the constitutional validity of these provisions of the revenue law.

The defendant cites and mainly relies upon section 9 of the Bill of Rights, which declares that "no person shall be deprived of his life, liberty or *property*, without due process of law."

The State has the taxing power. No government can exist without it. The whole property of the State is subject to the burden, which is in the nature of a first and paramount lien upon it, and it is pledged to contribute proportionally to defray the expenses requisite to support and carry on the government. Where property is taken in the due and valid exercise of the power to tax, which inherently resides in every government, the owner is not deprived of it "without due process of law," within the constitutional meaning of these words.

But in exercising this power the legislative department of the government cannot pass a law which shall amount to a legislative transfer, without cause, and without due process of the property of A to B.

And there are indispensable requisites of the power of taxation which must be observed, or the owner's title cannot be divested or transferred to another. These essential requisites cannot be dispensed with.

There are minor matters in regard to the *mode* or *manner*

of exercising the power which may be dispensed with, and consequently whose observance it is within the power of the Legislature to provide, may be presumed from certain evidence, or certain other facts.

That the Legislature is competent to declare that the tax deed shall be presumptive or *prima facie* evidence of the regularity and validity of all prior proceedings, is everywhere admitted. Blackwell on Tax Tit., 100, and cases there cited; Sedgwick on Const. and St. Law, 351; *Hand* v. *Ballou*, 2 Kern., 541.

"The power of the Legislature," says the Supreme Court of the United States, "to make the deed of a public officer *prima facie* evidence of the regularity of the prior proceedings, cannot be doubted." *Pillow* v. *Roberts*, 13 How., 476. For under this rule the presumption of regularity may be rebutted by proof, and no real injury be inflicted.

But notwithstanding the Legislature may, in general, alter the rules of evidence and declare the effect of certain facts when offered in evidence, there must, in the nature of things, be some limit to this right. If the Legislature should pass an act declaring that merely being found in the possession of property which had been stolen, should be *conclusive evidence* of guilt, courts would be very apt to hold, that this was an assumption and exercise of a power which it did not possess.

After a careful examination of the provisions of the section under consideration (§ 784), in the light of the general principles of the law applicable to such subjects, we must say that there are some matters so vital and essential to any valid exercise of the taxing power and in relation to which the deed is by our law made *conclusive* evidence that the law is, as to these, of questionable validity.

The case before us does not call for particular specification. We state the principle which must be legally and logically true, in this wise: If any given step or matter in

.the exercise of the power to tax (as for example the fact of a levy by the proper authority), is so indispensable, that without its performance no tax can be raised; then *that* step or matter, whatever it may be, cannot be dispensed with, and with respect to *that* the owner cannot be *concluded* from showing the truth, by a mere legislative declaration to that effect.

.·, It may be conceded that the law in question is unnecessarily rigorous and severe, especially in that feature of it which bars the owner in the short space of three years, but this is a question which is committed wholly to the wisdom and judgment of the Legislature. If no provision of the Constitution is violated, the Court has but one duty to perform, and that is the plain one of administering the law as the Legislature has made it.

Applying the principles above stated to the case at bar, we think the decision below was right.

. . The Legislature might provide for the sale of property for delinquent taxes, on a given day, without requiring any notice. And hence, they may provide, as they have done, in cases of ordinary sales on execution by sheriffs (Rev., § 3312), that the omission to give notice, while it subjects the officer to damages, shall, nevertheless, not affect the validity of the sale. As it is competent for the Legislature to declare that a notice in all respects regular is not essential, so it is competent for it to say that a deed shall, in the purchaser's favor, be conclusive evidence of due notice. Besides, the delinquent is notified by the law itself (Rev., § 763), that the sale will take place on a specified day, viz., on the first Monday of October in each year, or on the first Monday of the next succeeding month in which it can be made. § 776.

. The clerical mistake of the year, and the other alleged defects in the notice of sale, being simply irregularities in the exercise of the power, and not a vital part of the

power itself, fall within the principle just stated; and it is clearly within the power of the Legislature to declare that they are not essential, for such, in effect, is the provision that the deed shall be *conclusive* evidence of their due performance.

The same principle applies to the objection, that the assessor was not qualified when he made the assessment in question. It is not denied that he was the assessor *de facto*. He was acting under color of office. The law in so many words (§ 786) declares that his acts shall have the same validity as if he were an officer *de jure*. This concludes the matter. Such a provision is not unusual. And without any such provision, it is an every-day matter where rights of the public or third persons are concerned, to treat acts of officers *de facto* as valid. *Ex parte Strahl, ante;* Blackwell, 123.

At all events the statute is clear. Its meaning is unmistakable, and we are bound to give it effect, so far as it does not violate the constitutional rights of the citizen or property owner. While we have examined the law, prepossessed against it, in respect of some of its strongest provisions, yet we unite in the opinion that it is clearly valid, so far as respects the objections urged against it by the appellant, and more than this we cannot *decide*, and need not say.

Judgment affirmed.